**Michael A. HUBLER, Petitioner**

**v.**

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.

Decided April 28, 2009.

Joseph M. Sembrot, Harrisburg, for petitioner.

John C. Manning, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BUTLER.

Michael A. Hubler (Hubler) petitions this Court for review of the June 2, 2008 order of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief. Hubler presents one issue for this Court's review: whether the Board erred when it recommitted him for nine months as a technical parole violator on the basis that he possessed pornography and failed to successfully complete the Harrisburg Community Correction Center (HCCC) program, in violation of the conditions of his parole. For reasons that follow, we reverse the Board's order.

On October 22, 2007, Hubler was paroled from two concurrent 6 to 24–year state prison sentences and a concurrent 2 to 11–year state sentence to a community corrections facility. As conditions of his parole, Hubler agreed to the Board's requirements that he submit to an evaluation for sex offender treatment/service, obey the rules of the sex offender treatment program,[1] and avoid being removed from HCCC. He also agreed to comply with special conditions imposed by the parole supervision staff. On October 24, 2007, Hubler agreed to additional special conditions imposed by his parole agent which "prohibited [him] from owning, possessing, or having in [his] constructive possession any pornographic literature, photographs, magazines, or books.... Pornography is defined in this Special Condition as including, but not limited to, pictures of nude or partially nude males or females...." Certified Record (C.R.) at 99–101.

When he entered the facility, Hubler was made aware that HCCC residents are

---

1. Hubler was never convicted or adjudicated delinquent for any sexual offense. However, during his incarceration, the Board became aware that he should be supervised as a sexual offender. Hubler was thereafter treated as a sex offender, and he did not formally seek to refute that classification.

required to submit pre-approved destination forms to staff by Monday morning of each week. Unless the forms are approved, residents are not permitted to leave the facility. On more than one occasion, Hubler failed to timely submit his pre-approved destination forms. On Monday, December 3, 2007, Hubler again failed to timely submit his pre-approved destination form, having submitted it at noon that day.

On Sunday, December 2, 2007, Hubler approached an HCCC monitor, and showed him two drawings of women he had in his possession since he arrived at HCCC. The monitor told Hubler to show the drawings to his counselor, as he was not sure Hubler was permitted to have them. After the monitor determined that Hubler failed to show the drawings to his counselor as instructed, the monitor searched Hubler's locker and located the drawings in a notebook.

■ On December 4, 2007, Hubler was discharged from HCCC for his untimely submission of paperwork and for having pictures in violation of HCCC's sex offender protocol. A detainer was then issued by the Board. On February 1, 2008, following a revocation hearing, the Board recommitted Hubler to nine months in a state correctional facility as a technical parole violator. On February 25, 2008, Hubler filed a timely petition for administrative review which was denied by the Board on June 2, 2008. Hubler then petitioned for review by this Court.[2]

■ Hubler explains that what he had in his possession at HCCC was two hand-drawn pictures depicting clothed women. It was artwork Hubler intended for cre-

ation of tattoos on his person at some point in the future. No sexual references or acts were detailed in the drawings, and they were not obscene. Hubler argues, therefore, that he did not possess pornography in violation of the conditions of his parole. We agree.

The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Parolees are in a position different from the general population because they are still subject to an extant term of imprisonment and are the focus of society's rehabilitative efforts. Accordingly, parolees are subjected to certain conditions which restrict their activities substantially beyond the ordinary restrictions imposed by law on private citizens. Although the offender's freedom may be substantially restricted, the [Board] is vested with broad powers to fashion appropriate conditions of parole where they are intended to effectuate his rehabilitation and reintegration into society as a law-abiding citizen.

*Lee v. Pennsylvania Bd. of Prob. and Parole,* 885 A.2d 634, 638 (Pa.Cmwlth. 2005) (citations and quotations omitted).

Section 63.5 of the Board's Regulations, 37 Pa.Code § 63.5, states that "[p]arolees shall comply with special conditions which are imposed by the Board or which are subsequently imposed by the parole agent." Section 67.3 of the Board's Regulations, 37 Pa.Code § 67.3, requires that

[e]very parolee shall acknowledge the following:

(1) That he has read, or has had read to him, the conditions of his parole.

---

**2.** Our scope of review of the Board's decision denying administrative relief is limited to determining whether necessary findings of fact are supported by substantial evidence, an er-

ror of law was committed, or constitutional rights have been violated. *McNally v. Pennsylvania Bd. of Prob. and Parole,* 940 A.2d 1289 (Pa.Cmwlth.2008).

(2) That he fully understands the conditions of his parole and agrees to follow such conditions.

(3) That he fully understands the penalties involved if he violates the conditions of parole in any manner.

Section 21.1(b) of the act commonly referred to as the Parole Act, 61 P.S. § 331.21a(b),[3] and Section 63.3 of the Board's Regulations, 37 Pa.Code § 63.3, authorize the Board to recommit as a technical parole violator any parolee under its jurisdiction who violates the terms and conditions of his parole. Moreover, Section 67.1(c) of the Board's Regulations, 37 Pa.Code § 67.1(c), provides that "[i]f a parolee violates the special conditions of this chapter, he shall be subject to arrest and revocation of his parole or probation as if he had violated the original conditions...."

In this case, there is no question that Hubler's parole agent was authorized to impose as a special condition of his parole, a prohibition on his possession of literature, photographs, magazines, or books containing pictures of nude or partially nude males or females, and that Hubler acknowledged having read and understood that condition. C.R. 56–57, 99–101.

Hubler argues that the depictions of the females in his possession at HCCC did not violate the special condition of his parole because they were not "pornographic." Since the special condition at issue specifically provided its own definition of pornography as "literature, photographs, magazines, or books ... including, but not limited to, pictures of nude or partially nude ... females," we will analyze this issue within the context of that definition. C.R. at 99–101.

"Nude" is defined in Section 5903 of the Crimes Code, 18 Pa.C.S. § 5903(b), as "showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple." Based upon this definition in the Crimes Code, a female is not nude if her genitals, her buttocks and her breasts from the tops of her nipples down are covered with a fully opaque covering.

There is no question that the drawings in Hubler's possession depict what one may deem scantily-clad females. One of the drawings shows a female, wearing a bra or bikini top, leaning against a pole or tree; and a string, presumably from either a G-string or bikini bottom, is evident at her hip. C.R. at 102. "Daddy's Girl" is written above her head. C.R. at 102. Neither her breasts, genitals, nor her buttocks are exposed in the rendering. The other drawing depicts a squatting female with an assault weapon wearing combat boots, short shorts or a bikini bottom, and a cut-off t-shirt. C.R. at 103. Neither her genitals, buttocks, nor the entire breast area from her nipples down are exposed in the rendering. Accordingly, it is clear that neither drawing depicts a female who is "nude," as defined in Section 5903 of the Crimes Code. We must now look at whether either female could be considered "partially nude" and, therefore, in violation of Hubler's special condition.

The definition of "partially nude" is neither set forth in Hubler's special condition, nor in the Crimes Code. However, this Court has considered partial nudity in the context of improper entertainment under

---

**3.** Act of August 6, 1941, P.L. 861, *as amended,* added by Section 5 of the ·Act of August 24, 1951, P.L. 1401.

the Pennsylvania Liquor Code.[4] Specifically, in *Pennsylvania Liquor Control Bd. v. J.P.W.G., Inc.*, 88 Pa.Cmwlth. 385, 489 A.2d 992 (1985), this Court considered topless performers to be "partially nude."

Partial nudity has been most examined in terms of what entertainment was permitted on licensed premises under the Pennsylvania Liquor Code. We find the Board's special authority to restrict Hubler's activities here similar to the Liquor Control Board's (LCB) police power to regulate premises that sell alcohol, in order to protect the public interest. Section 104 of the Liquor Code, 47 P.S. § 1–104. A license to sell alcohol is a privilege granted by the Commonwealth under conditions imposed by the LCB. See Sections 207 and 468(d) of the Liquor Code, 47 P.S. §§ 2–207, 4–468(d). Before it was declared unconstitutional,[5] Section 493(10) of the Liquor Code, 47 P.S. § 4–493(10), prohibited "lewd, immoral or improper" entertainment on licensed premises. In the context of what state of undress was acceptable, and not "lewd, immoral or improper," this Court has held that at least the wearing of opaque pasties and a G-string was required. *See Rising Sun Entm't, Inc. v. Commonwealth of Pennsylvania, Bureau of Liquor Control Enforcement*, 829 A.2d 1214 (Pa.Cmwlth.2003); *Purple Orchid, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 721 A.2d 84 (Pa.Cmwlth.1998), aff'd, 572 Pa. 171, 813 A.2d 801 (2002). More specifically, in *J.P.W.G., Inc.*, this Court determined that topless performers were partially nude.

Based upon the foregoing, we hold that "partial nudity" in the context of the special condition of Hubler's parole requires exposure of at least a female's genitals, buttocks, or breasts from the tops of the nipples down.

■ We, therefore, hold that since the women depicted in Hubler's drawings do not have their genitals, buttocks, or breasts from the tops of the nipples down exposed, the drawings do not depict nudity or partial nudity. Since neither of the women in the drawings in Hubler's possession at HCCC in December of 2007 was even partially nude, he was not in possession of pornography, as that term is defined by the special condition. While Hubler's parole agent may have intended to prohibit Hubler's possession of depictions of "scantily-clad" women, the definition of pornography in the special condition did not meet that objective. C.R. at 63. We hold, therefore, that since Hubler was not in possession of pornography in violation of the special condition of his parole, his discharge from HCCC on that basis was in error.

■ As to whether the Board erred in concluding that Hubler failed to successfully complete the HCCC program, Hubler argues that he was depressed and slept all weekend as a result of having been accused of being in possession of pornography, which led to his failure to provide his paperwork in a timely fashion. The Board argues that, since Hubler's possession of the drawings was not officially questioned until December 4, 2007, his failure to time-

**4.** Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—10–1001.

**5.** The portion of Section 493(10) prohibiting immoral or improper entertainment was declared unconstitutionally vague in *Conchatta, Inc. v. Evanko*, 2005 WL 426452 (E.D.Pa. 2005), and the proscription against lewd entertainment was held unconstitutionally overbroad in *Conchatta, Inc. v. Miller*, 458 F.3d 258 (3d.Cir.2006). This change had the apparent effect of now allowing essentially any type of entertainment on licensed premises, unless and until there is a challenge to the contrary.

ly submit his paperwork could not have been caused by depression resulting from allegations that he possessed pornography. Unfortunately, the record is not clear as to whether the monitor's comments about the drawings on December 2, 2007 rose to the level of an accusation.

In any event, Hubler's failure to successfully complete the HCCC program was due to the totality of his failure to timely submit paperwork and his possession of pornography. C.R. at 82, 84. An HCCC counselor and HCCC's Center Director acknowledged, however, that but for his possession of "pornography," Hubler probably would not have been discharged from the facility. C.R. at 70–71, 83–84. Since we have determined that Hubler was not in possession of pornography, and he would have been permitted to remain at HCCC but for his possession of what was deemed to be pornography, the Board· erred in recommitting Hubler as a technical parole violator on the bases that he possessed pornography and that he failed to successfully complete the HCCC program.

For these reasons, the Board's order recommitting Hubler is reversed.[6]

### ORDER

AND NOW, this 28th day of April, 2009, the Pennsylvania Board of Probation and Parole's June 2, 2008 order is reversed. The Pennsylvania Board of Probation and Parole's Motion to Quash Appeal is denied.

6. Appended to Hubler's brief was a page from the August 13, 2008 issue of the Patriot–News depicting a woman covering her bare chest with only her arm. Petitioner's Brf. at 69. The advertisement was not part of the record before the Board. On March 13, 2009, the Board filed a Motion to Quash Appeal seeking sanctions against Hubler for including the advertisement in his brief. Hubler did not file a response to the motion but, at argument, his counsel stated that the advertisement was provided merely as an illustration of a point he was making. We did not consider the advertisement in reaching this conclusion. The Board's Motion to Quash Appeal is, therefore, denied.