J-A23016-22

2022 PA Super 191

IN THE INT. OF: T.Q.B., A MINOR     :     IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :
APPEAL OF: T.Q.B., A MINOR          :
                                    :
                                    :
                                    :
                                    :
                                    :
                                    :     No. 1527 MDA 2021

Appeal from the Dispositional Order Entered October 28, 2021
In the Court of Common Pleas of Dauphin County Juvenile Division at
No(s):  CP-22-JV-0000018-2021


BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.*

OPINION BY McCAFFERY, J.:                    **FILED:  NOVEMBER 14, 2022**

        T.B.Q. (Appellant), a minor,[1] appeals from the October 28, 2021,

dispositional order entered in the Court of Common Pleas of Dauphin County

(Juvenile Division), following her adjudication of delinquency for acts

constituting a violation of 18 Pa.C.S. § 6321(c) (transmission of sexually

explicit images by a minor) and 18 Pa.C.S. § 2709(a.1) (cyber harassment of

a child).  Appellant challenges the sufficiency of the evidence supporting her

adjudication of delinquency.  We affirm.

        The juvenile court summarized the facts, recounted during the

adjudication hearing, as follows:

                On October 18, 2020, Appellant appeared on Instagram Live
        with the victim, A.D., who is mentally challenged and was 12 years

_____

* Former Justice specially assigned to the Superior Court.

[1] Appellant was born in February of 2008.

old at the time. Appellant goaded A.D. to lift her shirt, exposing the bottom of her breasts. A.D.'s mother learned of the video when a family member called her that A.D. was on Instagram pulling up her shirt. A.D.'s mother testified that when she viewed the video, she saw A.D.'s stomach, her bra, and "a little bit" of the bottom of her daughter's breasts. Appellant's Instagram page was publicly available, and the recorded video of A.D. remained online for several months despite A.D.'s mother's repeated requests to remove the video. A.D.'s mother learned from the school principal that the video of A.D. was being shared. The principal provided information for A.D.'s mother to contact the police, which she did. As a result of the police investigation, [Appellant] was charged with cyber harassment of a child and transmission of sexually explicit images by [a] minor as a second-degree misdemeanor.

Juvenile Ct. Op., 1/31/22, at 2 (unpaginated).

The matter proceeded to an adjudication hearing that took place on October 20, 2021. At the beginning of the proceeding, the juvenile court spoke with A.D. to determine if she was competent to testify based on her disability. After hearing A.D.'s responses, the court declared her "incompetent as a witness to testify." N.T., 10/20/21, at 11. Both A.D.'s mother and the investigating officer, Christopher Michael Seiler, then testified about the incident. The video at issue was also admitted into evidence and played for the court to observe. *Id.* at 18-22.[2]

---

[2] It merits mention the video was not included in the certified record on appeal. It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review her claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (en banc). Nevertheless, because no one disputes the content of the video, and the footage was described in the testimony, we find our review is not hampered by this omission.

At the close of the Commonwealth's case, defense counsel orally moved for a directed verdict as to the count regarding transmission of sexually explicitly images by a minor, alleging that the "nudity" element of the offense had not been proven. *Id.* at 39-40. The court denied the motion. *Id.* at 41. Appellant then invoked her right not to testify. *Id.* at 42. After closing arguments, the court adjudicated Appellant delinquent of both charges. *Id.* at 50. It specifically found:

> I will say for the record that I did have some trouble with below the bottom of the nipple. In this case, we did see the exposed chest, breast below the bottom of the nipple. The nipple was not present. And that's the words of the statute. So if you cover the nipple, but you see the bottom of the nipple, then I'm assuming that what's the legislature intended. . . .

*Id.*

The court then placed Appellant on formal probation, and further ordered that she have no contact with A.D. and that she was to write an apology letter to the victim. *See* Adjudicatory/Dispositional Hearing Order, 10/28/21, at 1.[3] This timely appeal followed.[4]

Appellant raises the following two issues:

---

[3] In December of 2021, Appellant absconded from the jurisdiction of juvenile probation. The court entered an order directing that she be placed in an appropriate juvenile detention center. *See* Order of Court, 12/16/21, at 1.

[4] On November 23, 2021, the juvenile court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a concise statement on December 10, 2021. The juvenile court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 31, 2022.

1. Whether the [juvenile] court erred in adjudicating [Appellant] delinquent of transmission of sexually explicit images when the images shown do not show the nipple of the complainant and the [juvenile] court's construction of the statute runs contrary to other appellate holdings regarding the scope of nudity?

2. Whether the [juvenile] court erred in finding [Appellant] delinquent of cyber harassment of child, when the statements, while taunting, were not "seriously disparaging" as defined by the statute and the evidence was insufficient to show physical manifestation?

Appellant's Brief at 5.[5]

Because both issues concern challenges to the sufficiency of the evidence, this Court's review of such claims in an adjudication of delinquency setting is well-settled:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable

_____

[5] In Appellant's concise statement, she raised a third issue alleging the Commonwealth failed to produce sufficient evidence to support the transmission of sexually explicit images offense because it did not provide evidence that A.D. experienced emotional distress. *See* Concise Statement of Errors Complained of Upon Appeal Pursuant to Pa.R.A.P. 1925(a), 12/10/21, at 1 (unpaginated). However, Appellant did not raise or develop this claim in her appellate brief. Thus, we will deem the issue abandoned by Appellant for review purposes. ***See Commonwealth v. Dunphy***, 20 A.3d 1215, 1218-19 (Pa. Super. 2011) (finding issues raised in Pa.R.A.P. 1925(b) statement that are not included in appellate brief are abandoned).

inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–49 (Pa. Super. 2013) (citation omitted).

In Appellant's first argument, she claims that the court erred in finding there was insufficient evidence to support her adjudication for transmission of sexually explicit images by a minor. Appellant's Brief at 13. She alleges the evidence did not meet the nudity element based on the plain language of the statute. *Id.*

As noted above, Appellant was adjudicated delinquent on charge of transmission of sexually explicit images by a minor, which is defined in the Pennsylvania Crimes Code as follows:

**(c) Misdemeanor of the second degree.** -- Except as provided in section 6312, a minor commits a misdemeanor of the second degree when, with the intent to coerce, intimidate, torment, harass or otherwise cause emotional distress to another minor, the minor:

(1) makes a visual depiction of any minor in a state of nudity without the knowledge and consent of the depicted minor; or

(2) transmits, distributes, publishes or disseminates a visual depiction of any minor in a state of nudity without the knowledge and consent of the depicted minor.

18 Pa.C.S. § 6321(c) (emphasis in original). "Nudity" is defined as "[t]he showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, **the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple** or the depiction of covered male genitals in a discernibly turgid state." 18 Pa.C.S. § 6321(g) (emphasis added).

Appellant contends: "In plain language, the female breast without a non-opaque covering, such as a bra, nipple pastie or bikini is excluded from nudity." Appellant's Brief at 13-14. In support, she relies on two unpublished decisions by this Court: **Commonwealth v. Clayton**, 707 WDA 2020 (Pa. Super. Sept. 30, 2021) (unpub. memo.) and **Commonwealth v. King**, 1454 WDA 2015 (Pa. Super. Nov. 29, 2016) (unpub. memo.). Appellant also mentions that "other holdings regarding nudity in the context of probation violation [and] child pornography . . . provide a definition of nudity which is inconsistent with the trial court's ruling." Appellant's Brief at 14. For example, Appellant states that in the context of case law interpretating probationary rules, specifically 18 Pa.C.S. § 5903(b), nudity requires a fully exposed breast and that "displays of breasts absent the nipple cannot constitute nudity as prohibited by the statute or probation." Appellant's Brief at 18-19, *citing* **Hubler v. Pennsylvania Bd. of Prob. & Parole**, 971 A.2d 535, 538 (Pa. Commw. 2009). Likewise, she points to cases involving the liquor license law and nude dancing and claims the nudity element is met where the breasts are

"either exposed or the covering fails to be opaque." *Id.* at 20, 21-23, *citing*

***Com., Pennsylvania Liquor Control Bd. v. J.P.W.G., Inc.***, 489 A.2d 992,

993 (Pa. Commw. 1985) *and* ***Purple Orchid, Inc. v. Pennsylvania State***

***Police, Bureau of Liquor Control Enf't***, 721 A.2d 84, 85 (Pa. Commw.

1998), *aff'd*, 813 A.2d 801 (Pa. 2002). Appellant asserts that in the present

matter, A.D.'s exposure does not "constitute nudity or partial nudity" because

"her nipples were covered by her bra." *Id.* at 23. She claims the court "relies

on the 'lower part of the breasts,' being exposed as satisfying the statutory

definition of nudity[,]" but "such application is clearly at odds with the

definitions of nudity applied by the higher courts." *Id.*

Furthermore, Appellant states, "Contrary to the trial court's assertion,

the scope of nudity is ambiguous and its assertion that it is [un]ambiguous

does not make it so." *Id.* at 24. She contends that the phrase, "any portion,"

as set forth in Section 6321, is ambiguous because there could be multiple

interpretations — "in one construction it means any anatomical location below

the nipple, regardless of the nipple's opaque covering or not[, that] would

encompass breasts . . . covered by a pastie or a thin bra, because it would

show the lower portion of the breast" while "[i]n another [reading], consistent

with the rule of leniency, the statute would prohibit any showing of the nipple

in a less than opaque covering . . . [and as such,] nudity would require full

exposure of the breasts absent a pasty of covering" *Id.* at 25. Appellant

claims "the trial court's interpretation would create an expansive definition of

nudity, contrary to constitutional principles and commerce." *Id.* at 26. She concludes "the proper standard of nudity would be the exposure of the breast and nipple if the nipple is not covered or covered by a translucent, non-opaque covering." *Id.*

Although Appellant states her issue as challenging the sufficiency of the evidence, the argument is couched in terms of statutory construction.

> Where reviewing a claim that raises an issue of statutory construction, our standard of review is plenary. We recognize:
>
>> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.
>>
>> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying

- 8 -

precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

***Commonwealth v. Wilson***, 111 A.3d 747, 751 (Pa. Super. 2015) (citation omitted).

In finding there was sufficient evidence to support the Section 6321 adjudication, the juvenile court explained:

It must first be noted that Appellant is not correct that the video showed only the victim's bra. When A.D. lifted her shirt, she exposed a portion of the lower part of her breasts below the nipple. During the hearing, Appellant argued that the showing of the lower part of the breasts without revealing the nipple should not constitute nudity. Th[e juvenile] court, however, is constrained to apply statutes as enacted by the Legislature. The clear language of the law includes "any portion" of the breast "below the top of the nipple" in the definition of nudity for the purposes of Section 6321. This language is plain and unambiguous. The testimony and exhibit established that a portion of A.D.'s breasts below the top of the nipple was revealed. Consequently, that is sufficient to meet the definition of nudity in Section 6321(g) and thus to support Appellant's adjudication of delinquency on the transmission of sexually explicit images of a minor.

Juvenile Ct. Op. at 5 (unpaginated) (record citations omitted). We agree with the court's sound reasoning.

We first acknowledge that there is very limited case law on this issue. The crux of Appellant's argument is essentially that exposure of both the

breast and nipple is necessary for the nudity element. **See** Appellant's Brief at 23, 26. However, we reiterate that "nudity," is defined, in relevant part, as "the showing of the female breast with less than a fully opaque covering of **any portion thereof below the top of the nipple**[.]" 18 Pa.C.S. § 6321(g) (emphasis added). Therefore, by the plain language of the statute, the term does not require that the nipple must be exposed in order for an individual to have committed the offense. Here, during the Instagram video, A.D. lifted her shirt, at the request of Appellant, and the "bottom of her breast" was observed by viewers. N.T. at 37. As such, a portion of A.D's breast, which was below the top of the nipple, was exposed. Thus, the nudity element was satisfied.

Moreover, Appellant's reliance on **Clayton** and **King** is misplaced as neither case is applicable to the argument before us. **Clayton** concerned a discretionary aspects of sentencing challenge, and Section 6321 was only mentioned in a footnote in the concurring memorandum, wherein it was surmised that if the defendant had been a juvenile at the time he committed the crimes, the offenses would have been handled as summary offenses under Section 6321(a). **See Clayton**, 707 WDA 2020 (Pa. Super. Sept. 30, 2021) (unpub. concurring memo at 6 n. 5). Likewise, in **King**, the defendant challenged the lower court's dismissal of his request of post-conviction relief for lack of jurisdiction because even though he was no longer serving his sentence, he was required to register under the applicable sex offender

statute. *King*, 1454 WDA 2015 (Pa. Super. Nov. 29, 2016) (unpub. memo. at 4). Neither case addressed the question concerning the definition of nudity as set forth in Section 6321.

Likewise, *Hubler*, *J.P.W.G., Inc.*, and *Pink Orchid, Inc.*[6] are distinguishable as these cases do not concern the definition of "nudity" in terms of Section 6321. For example, in *Hubler*, the women depicted in the defendant's drawings that were at issue did "not have their genitals, buttocks, or breasts from the tops of the nipples down exposed[,]" and therefore, the Commonwealth Court deemed that the drawings did not "depict nudity or partial nudity." *Hubler*, 971 A.2d at 539. In *J.P.W.G.*, the appeal concerned the Liquor Control Board's imposition a fine on a licensee for permitting a topless dancer in its establishment and the Commonwealth Court determined the dancer's nudity qualified as "lewd, immoral or improper" entertainment, which supported the liquor code prohibition. *J.P.W.G.*, 489 A.2d at 995. In *Pink Orchid, Inc.*, the Commonwealth Court expanded the holding of *J.P.W.G.*, and opined that female performers, who appeared to be bare-breasted because the nipple area was visible even though it was covered by a liquid latex material that became clear and transparent when dry, were providing entertainment that was "lewd, immoral or improper" as defined by

---

[6] We note "this Court is not bound by decisions by our sister court." *Commonwealth v. Schultz*, 133 A.3d 294, 321 (Pa. Super. 2016).

the Pennsylvania Liquor Code. *Purple Orchid, Inc.*, 721 A.2d at 93. None of the cases addressed the "any portion" phrase as set forth in Section 6321. As such, Appellant's first claim fails.

In Appellant's second argument, she contends there was insufficient evidence to support her cyber harassment adjudication. Appellant's Brief at 26.

Cyber harassment of a child is defined, in pertinent part, as follows:

(1) A person commits the crime of cyber harassment of a child if, with intent to harass, annoy or alarm, the person engages in a continuing course of conduct of making any of the following by electronic means directly to a child or by publication through an electronic social media service:

(i) seriously disparaging statement or opinion about the child's physical characteristics, sexuality, sexual activity or mental or physical health or condition[. . . .]

18 Pa.C.S. § 2709(a.1). "Seriously disparaging statement or opinion" is defined as "[a] statement or opinion which is intended to and under the circumstances is reasonably likely to cause substantial emotional distress to a child of the victim's age and which produces some physical manifestation of the distress." 18 Pa.C.S. § 2709(a.1)(f).

Appellant claims "there was insufficient evidence to show physical manifestation of distress to constitute a seriously disparaging statement." Appellant's Brief at 26. She states that "[m]uch of the [juvenile] court's analysis conflates these provisions and would be applicable if [Appellant] was

- 12 -

charged under 18 Pa.C.S. § 2709(a)."[7]  *Id.* at 27.  Appellant complains the court "focused on the conduct within the video" regarding Appellant's behavior towards A.D., that she lied about the privacy of the video, that the whole video was sexual activity, and that Appellant knew the victim had a learning disability and as a result, the court found Appellant's actions established the "'intent to harass, annoy or alarm' prong" of Section 2709(a.1).  *Id.* at 27-28.  She then asserts the court found the video itself was a seriously disparaging statement, which was erroneous because it improperly focused "on the requests of [the victim]'s mother and [Appellant]'s refusal to withdraw the video."  *Id.*  She states her conduct towards A.D.'s mother was irrelevant "as to whether the intent towards [the victim] violated the statute."  *Id.*  Appellant notes A.D. was "smiling" in the video, which she alleges is evidence that the interaction was consensual.  *Id.* at 28-29.  She maintains that while A.D.'s mother testified the victim was "'humiliated,' there was no testimony that this humiliation was accompanied by physical symptoms."  *Id.* at 29.  Furthermore, Appellant states the court's reliance on tort law (intentional, or negligent, infliction of emotional dress) was misplaced because "[n]one of these tort principles support a finding of physical manifestation; in fact[,] both torts require physical manifestation."  *Id.*  She compares the circumstances to the tort of intentional infliction of emotional distress, and alleges for there

_____

[7]  Section 2709(a) concerns the general crime of harassment.

- 13 -

to be sufficient evidence, the Commonwealth needed to produce evidence of "depression, nightmares, anxiety, stress, anorexia, wailing into the night, post-traumatic stress disorder or any form of recognizable cognitive malady[,]" and here, it failed to do so. *Id.* at 32.

In finding Appellant delinquent of cyber harassment, the juvenile court explained:

> The video . . . that was played in court and admitted as Commonwealth's Exhibit 1 revealed that Appellant repeatedly and consistently pressured the victim into exposing her breasts. Appellant lied when she told A.D. that the video was private. It was also clear from the Appellant's statements during the entire episode that sexuality and sexual activity was the focus of the video. Appellant knew that A.D. had a learning disability and played on her mental condition. . . . [T]he court inferred the Appellant's intent to harass and annoy the victim through a continuing course of conduct from the circumstances of Appellant's repeated badgering of A.D. to expose her breasts, publishing the video online at Instagram, and refusing to remove the video for several months despite repeated requests by the victim's mother. The court also found the video itself to be a seriously disparaging statement. Statements are more than writings or oral proclamations. The video published to and maintained on Instagram was an obvious statement about A.D.'s sexuality, the sexual activity of indecent exposure, and the victim's mental condition. The effect of the video shared widely in A.D.'s circle of influence was observed by her mother and described as humiliation. From the victim's circumstances and her behavior, the court concluded that A.D. expressed some physical manifestation to the ongoing publication and circulation of the video.
>
> The question of physical manifestation is a matter of degree. While the court cannot find published cases delineating what is sufficient to constitute a physical manifestation for 18 Pa.C.S. § 2709(a.1), the court believes that long, ongoing, emotional harm to a child can be found to constitute a physical manifestation, analogous to the approach in tort law. *See*, *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. 1992), *appeal denied*, 621 A.2d 580

> (Pa. 1992); Restatement (Second) of Torts § 436A, Comment c. It is then within the province of the factfinder to determine if some physical manifestation is present, as the [juvenile] court concluded here.

Juvenile Ct. Op. at 6-7 (unpaginated). We agree with the court's determination while adding the following additional comments.

First, we point out A.D. was declared incompetent for purposes of testifying at the adjudication proceeding, and therefore, it was proper for the court to consider her mother's testimony regarding the incident. The evidence, including the video, clearly established that Appellant orchestrated and repeatedly pressured A.D. to lift up her shirt and reveal a portion of her breasts on a social media application, which was then viewed by hundreds of followers, unbeknownst to A.D. because of Appellant's false information. The mother testified that A.D. was "humiliated" and that "girls were looking at her funny" in school. N.T. at 25. Viewership was so widespread that A.D.'s school principal contacted the mother the next day to inform her of the video and that it was being circulating among the students. *Id.* at 17. Despite the mother's requests, Appellant refused to take down the video for several months. *Id.* at 15-16. Based on the totality of the circumstances, the Commonwealth established Appellant's continuing course of conduct intended to harass A.D., *via* a livestream video that was published on an electronic social media service, and she made a seriously disparaging statement regarding A.D.'s sexuality and sexual activity.

Second, we highlight that a "[s]eriously disparaging statement or opinion" is that which "is intended to and under the circumstances is **reasonably likely** to cause substantial emotional distress to a child of the victim's age and which produces **some** physical manifestation of the distress." 18 Pa.C.S. § 2709(a.1)(f) (emphasis added). As noted above, there is no case law on this issue. Nevertheless, it is evident that under these circumstances before us, it was "reasonably likely" that a child in A.D.'s situation would endure substantial emotional distress, which resulted in "some" physical manifestation of the distress"— her humiliation. Based on the language of the statute, Appellant's argument that the Commonwealth must show more than humiliation — like depression, nightmares, or anorexia — is unavailing. Further, Appellant's argument that A.D. was smiling during the video, which demonstrated that it was a consensual interaction, is also without merit. One can reasonably infer the victim's behavior was due to her mental disability, which led to a lack of understanding as to what was occurring. As such, we conclude that there was sufficient evidence to support the juvenile court's adjudication of delinquency as to the cyber harassment offense. Thus, Appellant's second claim also fails.

Dispositional order affirmed.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2022