J-A17016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| R.S.K. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.L.K. | : | |
| | : | |
| Appellant | : | No. 375 EDA 2023 |

Appeal from the Order Entered March 10, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2012-61169

BEFORE: KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: FILED OCTOBER 6, 2023

D.L.K. ("Mother") appeals from the order which: (1) directed a pharmacy to fill a prescription for a puberty-blocking drug to be administered to her minor child, K.K. (born in July 2009); (2) directed K.K.'s pediatric endocrinologist to administer the drug to K.K.; and (3) deferred any ruling on Mother's petitions to modify custody until Mother undergoes the psychological evaluation which the trial court ordered her to complete in 2020. We affirm.

Mother and R.S.K. ("Father") were married in 2000 and have been divorced since 2013. They have four children, two of whom are minors subject to a custody order. One of the minor children, K.K., was born as a female but identifies as a male. As K.K. does not wish to identify as a female, he has been working with physicians and therapists for several years to obtain

_____

[*] Retired Senior Judge assigned to the Superior Court.

treatment for gender dysphoria and to prevent the development of female physical attributes during puberty. In this regard, K.K. received a puberty-blocking Supprelin implant in 2020, and since April 2022 has been receiving bi-annual puberty-blocking Triptodur injections.

Since the parties separated in 2011, they have collectively filed dozens of competing petitions to modify custody, find each other in contempt of court, and for contempt hearings. Numerous custody orders have been entered in this contentious action, some of which have temporarily given Father sole legal and sole physical custody. Presently, Father and Mother have shared legal custody of the minor children, and Father has primary physical custody of them. *See* Trial Court Orders, 8/31/21 and 5/16/22.[1]

In August 2020, the trial court ordered both Mother and Father to undergo a psychological evaluation by a designated evaluator, Donald Seraydarian, Ph.D., as part of the custody evaluation process through Court Conciliation and Evaluation Service ("CCES"). Father complied with that directive. Mother has not. Mother attempted to circumvent the court's directive by claiming that she was assessed by Family Services; however, the trial court deemed that assessment incomplete and non-compliant, and on several occasions has ordered her to comply with its August 2020 directive.

---

[1] In its opinion, the trial court incorrectly stated that Father presently has sole legal custody of the minor children. *See* Trial Court Opinion, 3/29/23, at 3.

In March 2022, the trial court conducted a hearing regarding K.K.'s gender transition care. The court heard testimony from, *inter alia*: K.K.'s pediatric endocrinologist, Laurissa Kashmer, M.D.; K.K.'s primary physician, Scott Blore, M.D.; and K.K.'s therapist, Marjorie Morgan, LPC. **See** Domestic Court Sheet, 3/1/22, at 1. The trial court also conducted an *in camera* interview of K.K., with counsel and a court reporter present. **See id**. Unfortunately, the proceedings were not transcribed. As such, there is no record of the evidence and testimony provided to the trial court. At the conclusion of the hearing, the trial court entered its ruling that K.K. may continue to receive injectable puberty blockers, "but not the medical procedure."[2] **Id**. K.K. thereafter received a Triptodur injection in April 2022. **See** N.T., 1/27/23, at 43.

In May 2022, the trial court conducted a hearing. Following the hearing, the court entered a custody order which specified that, *inter alia*, the custody order entered on August 31, 2021 (granting Mother and Father shared legal custody over the minor children, and granting Father primary physical custody over them) would remain in effect, and that only Mother and Father could attend medical and other appointments for the minor children. **See** Custody Order, 5/16/22, at unnumbered 1.

---

[2] We understand this ruling to mean that, *in lieu* of surgically removing/receiving another Supprelin implant, K.K. would instead start receiving injections of a puberty blocking drug.

In June 2022, the trial court conducted a hearing. At the hearing, the court heard testimony from, *inter alia*, Dr. Kashmer, Dr. Blore, and Jeremy Gunn, Esquire, as counsel for, *inter alia*, Pantherx Rare Pharmacy ("Panther Pharmacy"). **See** Domestic Court Sheet, 6/14/22. The evidentiary portion of the hearing was not transcribed. Thus, there is no record of the evidence and testimony provided to the trial court. However, the trial court's "Decision" at the end of the proceedings was transcribed. Therein, the court directed that, prior to obtaining a second medical opinion regarding K.K., Mother must first consult with Dr. Kashmer and Dr. Blore. **See** N.T., 6/14/22, at 3-4; **see also** Domestic Court Sheet, 6/14/22 at 1 (providing that "[n]o second opinion/appt. on Gender Dysphoria can be made by [M]other, until Mother consults with Dr. Kashmer and Dr. Blore"). The court also ordered that Father's fiancé be removed as a contact for the minor children with respect to all medical providers. **See** N.T., 6/14/22, at 4; **see also** Domestic Court Sheet, 6/14/22 at 1 (providing that "[fiancé] is to be removed as a contact for [the minor children] in the medical offices").

On October 3, 2022, the trial court entered an order directing Dr. Kashmer to execute a prescription for K.K.'s bi-annual Triptodur injection and to administer the injection to K.K. as soon as possible, in October 2022. However, when Dr. Kashmer attempted to execute the prescription through Panther Pharmacy, she was unable to do so because Mother had contacted the pharmacy and stated that she had shared legal custody of K.K., she did

not consent to the Triptodur injection, and K.K. still had a Supprelin implant which had not been removed. Based on Mother's representations, Panther Pharmacy declined to fill the prescription due to its legal concerns regarding Mother's communication.

In November 2022, Father filed an emergency petition to find Mother in contempt of the October 3, 2022 order directing that K.K. receive a Triptodur injection, and sought recovery of his attorneys' fees as a sanction against Mother. Father also sought sole legal custody related to K.K.'s medical and psychological care.

In response, Mother filed an amended petition for modification of custody. Therein, Mother alleged that Father was not acting in the minor child's bests interests and that Father did not keep her updated regarding K.K.'s gender transition care. Mother also claimed that Dr. Kashmer was lying under oath and was non-credible and suspicious. Mother further averred that Father's legal counsel, Susan Smith, Esquire, was having sexual relations with Father, thereby making counsel incredible and causing Mother mental anguish. Mother additionally claimed that there are no records showing that she and Father are divorced or that their marriage has been annulled. Mother also sought sole legal and physical custody of the minor children, as well as an order that both parties attend CCES for an expedited custody evaluation, at Father's cost.

On that same date, Mother filed an amended petition for modification of custody and contempt wherein she claimed that Father did not complete his application for CCES. Mother requested sole legal and physical custody of the minor children. Mother also requested that Father's custodial visits be limited to Wednesday evenings from 5:00 p.m. to 7:00 p.m. until the CCES process is completed, and that Father's fiancé be forbidden from Father's custodial visits. Mother further requested an order directing Father to pay $2,500 for their oldest child's MCAT review course.

Mother thereafter filed an *ex-parte* emergency petition for contempt and *ex-parte* emergency modification of a custody order wherein she claimed that, in violation of a court order, Father's fiancé is listed as a secondary contact at a medical facility, the fiancé pretended to be the children's mother or stepmother, the fiancé lied to the court and medical professionals, and the fiancé called Mother's place of work on three occasions and tried to get Mother fired. Mother requested a restraining order against Father's fiancé, as well as a finding that Father was in contempt of the custody order for failing to remove the fiancé from the minor children's medical records. Mother also sought an emergency temporary order granting her sole legal and physical custody of the two minor children.

On January 27, 2023, the matter proceeded to a hearing on the pending petitions. Mother, who had previously been represented by counsel, appeared *pro se*. The trial court permitted Mother to read into the record a letter from

- 6 -

Panther Pharmacy to Dr. Kashmer explaining that, although a Supprelin implant has an indicated twelve-month duration, studies have shown that it can suppress puberty and hormones for up to two years and, as such, should not be used in conjunction with Triptodur due to the risk of adverse physical reactions. Mother conceded that K.K. received the Supprelin implant in December 2020, more than two years prior. Mother also complained that she had attempted to obtain a second opinion for K.K. from a doctor at Childrens Hospital of Philadelphia ("CHOP"); however, Father had cancelled the appointment. The trial court then reminded Mother that, in making the appointment, she had not complied with the conditions imposed by the court before any such second opinion appointment could be scheduled. The trial court then heard testimony via telephone from a representative from Panther Pharmacy, who indicated that the pharmacy would need an order from the court directing it to honor one or the other parent's decision for the Triptodur prescription, since Father provided consent and Mother did not. The court inquired if the pharmacy would honor an order from the court indicating that Father was the sole legal custodian for purposes of parental consent for the Triptodur injections, and the pharmacy representative responded in the affirmative. ***See*** N.T., 1/27/23, at 53. At the conclusion of the hearing, the court indicated that it would not rule on the various motions for contempt of court and would hold them in abeyance. ***See id***. at 65. The court directed Mother to complete her psychological evaluation by Dr. Seraydarian as quickly

as possible, so that the court could address the various petitions for modification of custody that she had filed. *Id*. at 66, 67. The trial court embodied its various rulings in a "Domestic Court Sheet" which was filed following the conclusion of the hearing. *See* Domestic Court Sheet, 1/27/23, at 1.

On February 6, 2023, Mother filed a notice of appeal. Later that same day, the trial court entered two orders which collectively directed that: (1) Dr. Kashmer immediately execute a prescription to Panther Pharmacy for a Triptodur injection for K.K.; (2) Panther Pharmacy immediately dispense a Triptodur injection on K.K.'s behalf; (3) Dr. Kashmer or her staff facilitate the prompt administration of the Triptodur injection to K.K.; and (4) Father has sole legal custody as it pertains to the continued Triptodur injections for K.K. The trial court also issued an order directing Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Meanwhile, this Court issued an order directing the trial court to enter a final order in the matter, as the Domestic Court Sheet from which Mother appealed was neither a final order nor appealable. On March 10, 2023, the trial court complied with this Court's directive by entering an order which: (1) affirmed the two orders entered on February 6, 2023; and (2) indicated that Mother's petitions for modification of custody would not be addressed until she complied with the August 2020 order to undergo a psychological evaluation

by Dr. Seraydarian. *See* Order, 3/10/23, at unnumbered 1.[3] The trial court thereafter authored an opinion pursuant to Rule 1925(a).

Mother raises the following issues for our review:

1. Did the [trial] court abuse its discretion by not holding a properly structured hearing?

2. Did the [trial] court abuse its discretion by authorizing the injection of . . . K.K.?

3. Did the [trial] court abuse its discretion by placing conditions on [Mother] getting a second opinion at [CHOP]?

4. Did the [trial] court abuse its discretion by imposing conditions on the psychiatric evaluation of [Mother] in order for there to be a custody evaluation by CCES?

Mother's Brief at 3 (unnecessary capitalization omitted).

Our standard of review

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as

_____

[3] A notice of appeal filed after the announcement of a determination but before the entry of an appealable order is treated as having been filed after such entry and on the day thereof. *See* Pa.R.A.P. 905(a)(5). Accordingly, Mother's premature notice of appeal was deemed as having been filed upon the entry of a final appealable order. *See id*.; *see also Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511 (Pa. Super. 1995) (*en banc*) (holding that this Court's appellate jurisdiction is perfected where appellant prematurely appealed from an order denying post-trial relief and judgment was later entered).

shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Further, we have stated the following:

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

With respect to Mother's first issue, concerning the structure of the January 27, 2023 hearing, we must determine whether she preserved it for our review. When a trial court directs an appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b), any issues not raised in that statement are waived. *See Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998); *see also* Pa.R.A.P. 1925(b)(3)(vii) (providing that "issues not included in the Statement . . . are waived"). Thus, any issue that was not raised and preserved properly before the lower court in the concise statement is waived. *See Korman Commercial Props. v. Furniture.com, LLC*, 81 A.3d 97, 102 (Pa. Super. 2013); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Conversely, issues which are raised in the concise statement but not developed or discussed in an appellate brief are deemed

abandoned. ***See In Interest of T.Q.B.***, 286 A.3d 270, 273 (Pa. Super. 2022) (holding that issues raised in a Rule 1925(b) concise statement that are not developed in appellate brief are abandoned).

Here, in her court-ordered concise statement, Mother limited her first issue to a claim that "[t]he [trial] court abused its discretion by not holding a properly structured hearing. ***Susan Smith, Esquire dominated the hearing and made medical conclusions without having an expert witness testify***." ***See*** Concise Statement at ¶ 2 (emphasis added). However, in her brief, Mother made no mention of Attorney Smith, let alone her conduct or statements at the January 27, 2023 hearing. Instead, in relation to her first issue, Mother discusses entirely different issues concerning custody and contempt matters. ***See*** Mother's Brief at 17-21. However, as explained above, the trial court held in abeyance any ruling on the competing petitions for contempt, and expressly deferred ruling on the pending custody petitions until Mother completes her psychological evaluation. ***See*** N.T., 1/27/23, at 65-66; ***see also*** Order, 3/10/23, at 1. Thus, as Mother failed to discuss the specific issue raised in her concise statement—concerning how the conduct and statements of Attorney Smith impacted the structure of the January 27, 2023 hearing, we deem Mother's first issue abandoned.

In her second issue, Mother contends that the trial court abused its discretion in authorizing the Triptodur injections for K.K. without receiving expert testimony at the January 27, 2023 hearing, or considering FDA

warnings about puberty blockers.[4]  Mother maintains that there was no expert

testimony regarding: the efficacy of puberty blocking medications or hormone

treatments; the appropriate standard of informed consent for mental health

professionals or endocrinologists; or available non-surgical treatments for K.K.

Mother claims that she testified at the hearing regarding FDA warnings for

puberty blockers, studies concerning cognitive psychosocial functioning of

children with puberty blockers and asserted that a second opinion was needed

on hormone disorder.

The trial court considered Mother's second issue and determined that it

lacked merit.  The court reasoned:

> This court did not abuse its discretion when [it] entered . . .
> orders regarding [K.K.]'s [Triptodur] injection.  This court
> previously entered an order on October 3, 2022, supporting
> [K.K.]'s [Triptodur] injection based on [K.K.]'s best interest as a
> child, but Mother intervened[,] which caused [the court] to have
> to enter new orders to ensure that the prescription and
> administration are authorized.  Furthermore, [the court] allowed
> Mother to read to this court a letter from Panther Pharmacy to Dr.
> Kashmer about "clinical concerns" regarding the [Triptodur]
> injection and the [Supprelin] implant and possible risks of
> "adverse effects" of administrating the [Triptodur] injection before
> removing the [Supprelin] implant.  N.T., 1/27/[]23, [at] 40-42.
> Furthermore, the letter indicates that the [Supprelin] implant's
> duration is twelve months with some possible, continued
> dispersion.  *Id*.[ at] 40.  Mother confirmed on the record that the
> [Supprelin] implant was implanted on December 28, 2020, which
> is past two years.  *Id*.[ at] 42.  We carefully considered this

---

[4] In the discussion of her second issue, Mother again attempts to discuss various additional claims which were not raised in her concise statement.  **See** Mother's Brief at 21-23.  Because these additional claims were not raised in the concise statement, we need not address them, as they are waived.  **See** **Korman**, 81 A.3d at 102; **see also** Pa.R.A.P. 302(a).

information and the record, and we called Panther Pharmacy on the record before reasonably deciding to enter the new orders related to [K.K.]'s [Triptodur] injection.

Trial Court Opinion, 3/29/23, at 12-13 (unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in authorizing continued Triptodur injections for K.K. Although Mother argues that there was no factual basis for the trial court's orders authorizing Triptodur injections for K.K., the record belies Mother's claim. The trial court conducted numerous hearings on the issue, and heard testimony from several medical professionals, on more than one occasion, including Dr. Kashmer and Dr. Blore.[5] The court also conducted an *in camera* interview with K.K., presumably to determine whether K.K. wanted to receive Triptodur injections. Mother explicitly told the trial court that she did not have any objection to K.K. receiving Tritodur injections. *See* N.T., 1/27/23, at 38-39. Instead, Mother's concerns stemmed from a letter from Panther Pharmacy to Dr. Kashmer

_____

[5] To the extent that Mother seeks to challenge the testimony provided by such medical professionals, she failed to ensure that the transcripts for the hearings at which they testified were included in the certified record. The Rules of Appellate Procedure contemplate that the parties who are in the best position to know what they actually need for appeal are responsible to take affirmative actions to secure transcripts and other parts of the record. *See* Pa.R.A.P. 1911 (providing that "[t]he appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor . . ..")). Moreover, the failure to request a transcript for a hearing generally results in waiver of any claims that cannot be resolved in the absence of the necessary transcript. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (citing Pa.R.A.P. 1911(a)). Here, however, the record is sufficient based on other evidence to permit our review. Accordingly, we do not find waiver.

explaining that, although a Supprelin implant has an indicated twelve-month duration, studies have shown that it can suppress puberty and hormones for up to two years and, as such, should not be used in conjunction with Triptodur due to the risk of adverse physical reactions. *See* N.T., 1/27/23, at 40-42 (wherein the court permitted Mother to read the letter into the record). After carefully considering all of the information provided to it, including the possible risks of adverse effects as raised by Mother, the trial court determined that continued Triptodur injections were in K.K.'s best interest, particularly since it had been over two years since K.K. received the Supprelin implant in December 2020. *See id*. at 42. As an appellate court, we must accept the findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. *See C.R.F.*, 45 A.3d at 443. As the trial court's rulings are reasonable and supported by the record, we discern no abuse of discretion. Accordingly, Mother's second issue merits no relief.[6]

In her third issue, Mother contends that the trial court abused its discretion by placing conditions on her getting a second medical opinion for

---

[6] Notably, Mother did not appeal the trial court's ruling in March 2022, permitting K.K. to receive Triptodur injections, which must be administered every six months. Nor did Mother appeal the trial court's October 3, 2022 order directing that K.K. receive another Triptodur injection as soon as possible, as six months had elapsed since K.K.'s April 2022 injection. Instead, Mother simply attempted to obstruct compliance with the October 3, 2022 order by directly contacting Panther Pharmacy.

K.K. Mother asserts that "[n]othing demonstrates a hormone disorder . . . [and t]here is no medical reason for the Triptodur injections." Mother's Brief at 24. According to Mother, "[a] qualified professional for mental health never saw [K.K.]" *Id*. Mother argues that she "sent the endocrinologist at CHOP what the doctor required." *Id*. Mother indicates that she "told [the court] that there were no published reports of adolescents withdrawing from puberty-suppressing drugs from resuming normal puberty development typical for their sex." *Id*. Mother maintains that Father "stopped" her from getting a second opinion at CHOP, and the trial court supported Father's decision. *Id*.

The trial court considered Mother's third issue and determined that it lacked merit. The court reasoned:

> This court did not abuse its discretion by placing prerequisites for Mother before seeking second opinion at [CHOP] regarding [K.K.]'s gender transition care. This court held a conference on September 20, 2022, with both parties through their counsel where the prerequisites were established. [*See*] N.T., 1/27/[]23, [at] 24. While Mother claims that her counsel at the time did not share this information with her and that she did not receive any e[-]mails about this, Father's counsel proved on the record that an e[-]mail on the day of the conference included Mother[,] and that Father's counsel reminded Mother of the instruction through e[-]mail on December 12, 2022. *Id*.[ at] 25-26. Therefore, we did not arbitrarily set the prerequisites for seeking a second opinion at [CHOP].

Trial Court Opinion, 3/29/23, at 13-14 (unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in imposing prerequisites for Mother to obtain a second medical opinion for K.K.'s gender

transition care. At a hearing in June 2022, the trial court directed that, prior to obtaining a second medical opinion regarding K.K., Mother must first consult with Dr. Kashmer and Dr. Blore. ***See*** N.T., 6/14/22, at 3-4; ***see also*** Domestic Court Sheet, 6/14/22 at 1 (providing that "[n]o second opinion/appt. on Gender Dysphoria can be made by [M]other, until Mother consults with Dr. Kashmer and Dr. Blore"). While there is no transcript in the record for the September 2022 conference referenced by the trial court, the court referenced additional conditions that had been imposed before any second medical opinion could be obtained for K.K., including that the second opinion doctor must first speak with Dr. Kashmer and be provided with certain records prior to scheduling an appointment with K.K. ***See*** N.T., 1/27/23, at 23-24. Mother did not comply with these directives, causing Father to cancel the appointment that Mother had scheduled. ***Id***. at 23.

In this Court's view, the trial court's conditions were reasonable and necessary to ensure that: (1) Mother was appropriately informed by K.K.'s treating physicians regarding K.K.'s medical needs and course of treatment; and (2) K.K. was not subjected to a medical appointment with a new physician who had not spoken with K.K.'s pediatric endocrinologist or provided with the information and documentation needed to make an accurate diagnosis. As we discern no abuse of discretion by the trial court, Mother's third issue merits no relief.

In her final issue, Mother contends that the trial court abused its discretion by ordering her to complete a psychological evaluation with Dr. Seraydarian before the matter can proceed to a CCES custody evaluation and her various pending custody petitions may be addressed.

The polestar of child custody law is to serve the best interests of the child. *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018). To aid in this determination, a custody court "may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts." Pa.R.C.P. 1915.8(a). Whether to order a custody evaluation is a matter within the purview of the custody court. *See Jordan v. Jackson*, 876 A.2d 443, 455 (Pa. Super. 2005) (holding "[i]t is clearly within the court's discretion whether to order an evaluation").

However, where a custody court has ordered an appellant to undergo a psychological evaluation and deferred consideration of a custody petition until such evaluation is completed, this Court may not consider the custody court's exercise of its discretion in ordering the psychological evaluation where no final custody order has been entered in the action. *See Miller v. Steinbach*, 681 A.2d 775, 778 (Pa. Super. 1996) (holding that this Court was without jurisdiction to address an appeal of an order deferring any ruling on custody until father underwent and paid for psychological evaluations). This is because "the issue concerning the psychological evaluations is intertwined with the

issue of whether [a parent] should be granted partial custody of his minor child." ***Id***.

Here, the trial court ordered Mother to undergo a psychological evaluation with Dr. Seraydarian in August 2020. To date, Mother has not complied with that directive, despite repeated instructions by the trial court that she do so. The record reveals that Mother's mental health is very much in question, and that a psychological evaluation will be critical to the trial court's assessment of what custody arrangement will be in her children's best interest. Thus, as the question of the psychological evaluation is intertwined with the issue of whether Mother's custodial rights should be modified, we may not address it at this juncture. ***Id***. Any challenge that Mother may wish to raise regarding the psychological evaluation can be presented on appeal once the trial court has issued a final custody order in the matter. ***Id***.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/6/2023