J-A17017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMES A. D'ANGELO, SR. AND CAROLYN D'ANGELO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1928 EDA 2022 |
| JP MORGAN CHASE BANK, N.A., JAMES A. D'ANGELO, JR., MORTGAGE FIRST LENDING GROUP, CITIZENS SETTLEMENT SERVICES, INC., TONYA FRIEND, MICHELLE A. SHERIDAN, STEWART TITLE INSURANCE COMPANY | : | |

Appeal from the Order Entered June 27, 2022
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2007-00041

BEFORE: KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:          **FILED DECEMBER 19, 2023**

James A. D'Angelo, Sr., and Carolyn D'Angelo ("the D'Angelos") appeal from the orders granting summary judgment to JP Morgan Chase Bank, N.A. ("Chase") and Stewart Title Guaranty Company ("Stewart Title").[1] After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The D'Angelos initiated proceedings against Stewart Title Insurance Company; however, by stipulation, the parties agreed to substitute Stewart Title Guaranty Company as the correct party, and the trial court approved that stipulation on September 9, 2013. **See** Order, 9/9/13. Nevertheless, the caption incorrectly indicates Stewart Title Insurance Company rather than Stewart Title Guaranty Company.

This case has an extensive procedural history spanning three dockets over seventeen years and involving and three trial court judges. In a prior appeal, this Court summarized a significant portion of the relevant factual and procedural history as follows:

On July 3, 2006, [Chase] filed a mortgage foreclosure action against [the D'Angelos] at No. 2006-06047 alleging that [they] had defaulted on a note and mortgage dated August 11, 2005 ("the Note and Mortgage") in the amount of $1,462,500.00. [The Note and Mortgage pertained to residential property owned by the D'Angelos at 102 Pickwick Drive in Doylestown, Pennsylvania ("the property"). Chase was not a party to the 2005 mortgage transaction, which involved the refinancing of existing mortgages on the property by Lancaster Mortgage Bankers, LLC ("Lancaster"). Lancaster thereafter assigned the Note and Mortgage to EMC Mortgage Corporation ("EMC Mortgage"). On September 14, 2006, EMC Mortgage assigned the Note and Mortgage to Chase, with an effective date of February 16, 2006. Thereafter, Chase paid approximately $70,600 in outstanding interest, property taxes, and homeowner's insurance premiums on the property, while the D'Angelos made no payments whatsoever.]

On January 4, 2007, [the D'Angelos] filed a multi-count complaint against [Chase] and other defendants at No. 2007-00041[ ("the declaratory judgment action"). The other defendants named in the declaratory judgment action were: the D'Angelos' son, James D'Angelo, Jr. ("James Jr."); Mortgage First Lending Group ("Mortgage First"); the president and principle of Mortgage First, Harry M. Anthony ("Anthony"); Citizens Settlement Services, Inc. ("Citizens"); an employee and notary public for Citizens, Tonya Friend ("Friend"); and James Jr.'s girlfriend, Michelle A. Sheridan ("Sheridan").] [Chase] filed an answer to the complaint asserting that the Note and Mortgage were valid because they were duly notarized, and [asserted a counterclaim for unjust enrichment, averring] that [the D'Angelos] would be unjustly enriched if the court granted declaratory relief, because [the D'Angelos] had two prior mortgages on the property totaling approximately $1,500,000.00 which they had paid off with the proceeds of the Note. On March 12, 2007, [the D'Angelos] filed an amended complaint at No.

2007-00041. [In their amended complaint, only Counts I and II were directed at Chase. At Count I, the D'Angelos sought a declaratory judgment that the Note and Mortgage were forged and that Chase had no right to enforce the invalid and unenforceable Note and Mortgage. At Count II, the D'Angelos sought quiet title to the property.]

On July 1, 2010, [Chase] filed a motion to consolidate the actions at Nos. 2006-06047 and 2007-00041. On July 16, 2010, [Chase] filed a motion for partial summary judgment in [the declaratory judgment] action at No. 2007-00041.

On December 14, 2010, the trial court granted [Chase's] motion to consolidate the two actions. On April 11, 2011, the trial court granted [Chase's] motion for partial summary judgment [on the unjust enrichment counterclaim] and imposed an equitable lien of $1,339,387.50 against [the D'Angelo's] interest in the property, finding that[,] regardless of whether the Note and Mortgage were forged, [the D'Angelos] received a significant benefit from the Note and Mortgage by using the Note proceeds to pay off prior mortgages.

On December 28, 2011, [the D'Angelos] filed a motion for leave to file a second amended complaint to add EMC Mortgage as an additional defendant and to add a new claim against [Chase] and EMC Mortgage under the Unfair Trade Practices and Consumer Protection Law [("UTPCPL"), 73 Pa.C.S.A. § 201-1 *et seq*.]. The trial court did not immediately rule on [the D'Angelos'] motion to amend.

On September 10, 2012, the trial court denied [the D'Angelos'] emergency motion to stay the sheriff's sale of the property. On September 12, 2012, [the D'Angelos] appealed the order denying their emergency motion to this Court at 2393 EDA 2012[; however, this Court quashed the appeal as interlocutory]. On September 14, 2012, the property was sold to [Chase] at sheriff's sale. [The D'Angelos] failed to file a petition to set aside the sheriff's sale, and the sheriff's deed was recorded on October 10, 2012. . . ..

[In November 2012, the D'Angelos commenced a separate action at No. 2012-09563 against Stewart Title by filing a writ of summons.]

On February 6, 2014, [Chase] filed a motion for partial summary judgment on Counts I and II of [the D'Angelos']

amended complaint in [the declaratory judgment action at] No. 2007-00041. On February 2[8], 2014, the trial court denied [the D'Angelos'] motion for leave to file a second amended complaint in [the declaratory judgment action at] No. 2007-00041.

On March 13, 2014, [the D'Angelos] filed a response in opposition to [Chase's] motion for partial summary judgment in No. 2007-00041. On April 30, 2014, [the D'Angelos] filed a motion for leave to file a third amended complaint on the basis of a press release by the United States Department of Justice which stated that [Chase] had agreed to pay a $13 billion settlement for misleading investors about securities containing toxic mortgages.

On July 3, 2014, after briefing and oral argument, the trial court granted [Chase's] motion for summary judgment on Count II [for quiet title,] but denied summary judgment on Count I [for declaratory judgment]. On August 8, 2014, [the D'Angelos] appealed the July 3, 2014 order to this Court at 2313 EDA 2014. On January 13, 2015, the trial court [entered an order denying the D'Angelos'] motion for leave to file a third amended complaint. [I]n March . . . 2015, this Court quashed [the D'Angelos'] appeal at 2313 EDA 2014.

Thereafter, [i]n July . . . 2015, [Chase] filed a motion to voluntarily discontinue its mortgage foreclosure action at No. 2006-06047 without prejudice pursuant to Pa.R.C.P. 229(a). On August 17, 2015, [the D'Angelos] filed a response opposing [Chase's] motion. On December 1, 2015, the trial court entered [an] order . . . grant[ing Chase's] motion to voluntarily discontinue its [mortgage foreclosure] action at No. 2006-06047 and vacated the order consolidating the actions at Nos. 2006-06047 and 2007-00041.

[The D'Angelos] filed a notice of appeal at No. 2006-06047—but not at No. 2007-00041—from the December 1, 2015 order. [However, because the December 1, 2015 order was not appealable, this Court quashed the appeal.]

***D'Angelo v. JP Morgan Chase Bank, N.A.***, 161 A.3d 374 (Pa. Super. 2017) (unpublished memorandum at **1-5) (footnotes and unnecessary capitalization omitted).[2]

In 2016, the D'Angelos filed a complaint in the separate action they commenced against Stewart Title at No. 2012-09563. In that pleading, the D'Angelos asserted two claims for violations of the UTPCPL, a claim under the Fair Credit Extension Uniformity Act,[3] a claim for fraud/fraudulent concealment, a civil claim under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act,[4] and a claim for unjust enrichment. The D'Angelos averred that Stewart Title had been complicit in, and was vicariously liable for, the allegedly fraudulent actions of the individuals and entities participating in the August 2005 mortgage transaction. Specifically, the D'Angelos averred that Stewart Title, a title insurance company, had an agency relationship with Absolute Settlement Services ("Absolute") which authorized Absolute to issue title insurance policies for Stewart Title up to a certain amount (*i.e.*, $1,000,000). ***See*** Verified Complaint, 10/27/16, at ¶¶ 9, 20. The D'Angelos claimed that Stewart Title permitted Absolute to exceed

---

[2] For a more detailed history of the procedural background of this appeal, ***see*** Trial Court Opinion, 11/10/14, at 1-12.

[3] ***See*** 73 P.S. § 2270.1 *et seq*.

[4] ***See*** 18 U.S.C.S. § 1962.

the limit of its authority, without written permission to do so, when Absolute issued a title insurance policy on behalf of Stewart Title for the property upon the acquisition of the Note and Mortgage by Chase. *See id*. The D'Angelos further claimed that Stewart Title's contractual obligation under the title policy to assume Chase's defense in the declaratory judgment action, and Stewart Title's expenditure of hundreds of thousands of dollars in paying for Chase's counsel fees, constitute evidence of collusion between Chase and Stewart Title in defrauding the D'Angelos. *See id*. at 15, 18, 20, 59. The D'Angelos eventually withdrew the two UTPCPL claims, and the Fair Credit Act claim asserted against Stewart Title.

In 2017, the D'Angelos filed a motion for leave to file an amended complaint in the declaratory judgment action. Therein, the D'Angelos sought to assert fraud claims against Chase and Stewart Title (which was not a party to the declaratory judgment action), and to add Chase's attorneys as defendants. The trial court denied that motion on January 19, 2018.[5]

In October 2018, Chase and Stewart Title filed renewed motions for summary judgment. On February 7, 2020, the trial court entered orders denying the renewed motions for summary judgment filed by Chase and Stewart Title. However, the trial court later vacated its February 7, 2020 orders. In July 2021, the trial court granted Sheridan's motion for summary

_____

[5] The docket bears an entry dated January 22, 2018, which indicates that the order was entered on January 19, 2018.

judgment and dismissed all claims against her with prejudice. On August 6, 2021, the trial court entered an order granting Chase's renewed motion for summary judgment and dismissed all claims against it with prejudice. On August 13, 2021, the trial court entered an order granting Stewart Title's renewed motion for summary judgment and dismissed all claims against it with prejudice.

The matter then proceeded against the remaining defendants in the declaratory judgment action. The case was finally concluded on June 27, 2022, when the trial court entered an order granting summary judgment in favor of the D'Angelos and against James, Jr., Mortgage First, Citizens, Anthony, and Friend in the amount of $1,862,500.00. The D'Angelos filed a timely notice of appeal, and both they and the trial court complied with Pa.R.A.P. 1925.[6]

The D'Angelos raise the following issues for our review:

1. Where a motion to amend raises the existence of fraudulent concealment by the defendants, is it an abuse of discretion and an error of law to deny the right to amend?

2. Does the coordinate jurisdiction rule prohibit a successor judge overruling a decision of a predecessor judge in the same case?

3. Do repetitious summary judgment motions already denied a total of five times by two predecessor judges require the non-

---

[6] The D'Angelos seventeen-page Rule 1925(b) concise statement is anything but concise, and purports to raise nine issues and thirteen sub-issues, many of which are duplicative. **See** Concise Statement, 8/16/22, at 4-17; **see also** Trial Court Opinion, 8/26/22, at 3 (describing the concise statement as "extensive" and "highly repetitious").

movant to provide additional issues of material fact to survive the same summary judgment?

4. When fraud on the court results in a series of orders based on the court's belief in the fraud as truth, are decisions based on that fraud subject to vacatur?

D'Angelos' Brief at 17-18 (issues reordered for ease of disposition, unnecessary capitalization omitted).

In their first issue, the D'Angelos contend that the trial court erred or abused its discretion by denying their repeated motions for leave to file amended complaints. Our standard of review of a trial court's order denying a party leave to amend a pleading is limited to considering whether the trial court erred as a matter of law or abused its discretion. *See Schwarzwaelder v. Fox*, 895 A.2d 614, 621 (Pa. Super. 2006). Pursuant to Pa.R.Civ.P. 1033(a), a party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. *See* Pa.R.Civ.P. 1033(a). The right to amend lies within the discretion of the trial court and should be granted liberally unless there is an error of law or prejudice to the adverse party. *See Hill*, 85 A.3d at 557.

However, amendments may not be made if they introduce a new cause of action after the statute of limitations has run. *See John Goffredo & Sons, Inc. v. S. M. G. Corp.*, 446 A.2d 255, 256 (Pa. Super. 1982). Further, while the right to amend should not be withheld when there is some reasonable possibility that the amendment can be accomplished successfully, "where

- 8 -

allowance of an amendment would . . . be a futile exercise, the [pleading] may be properly dismissed without allowance for amendment." ***Wiernik v. PHH U.S. Mortg. Corp.***, 736 A.2d 616, 624 (Pa. Super. 1999). Finally, to permit a plaintiff to change its claim at the very end of the case may be unjust. ***See West Penn Power Co. v. Bethlehem Steel Corp.***, 348 A.2d 144, 156 (Pa. Super. 1975) (declining to permit amendment when the moving party would gain an inequitable advantage).

The D'Angelos assert that they "have a reasonable possibility that amendment [*sic*] can be accomplished successfully." D'Angelos' Brief at 74. They claim that they provided the trial court with a fully developed proposed amended complaint. ***Id***. at 75. According to the D'Angelos, "[Chase's] best argument against amendment is the statutes of limitation." ***Id***. The D'Angelos assert that the statutes of limitation are unavailable to Chase and Stewart Title. ***Id***.

Our review discloses that, in the declaratory judgment action, the D'Angelos filed three separate motions for leave to amend. In those motions, the D'Angelos sought to add new parties as defendants and assert several new claims against both new and existing parties. Specifically, in 2011, the D'Angelos filed a motion for leave to file a second amended complaint and add an additional defendant. Therein, the D'Angelos sought to add EMC Mortgage as an additional defendant and to add new claims against Chase and EMC Mortgage under the UTPCPL. Honorable Jeffrey Finley denied that motion by

order entered on February 28, 2014. In April 2014, the D'Angelos filed a motion for leave to file a third amended complaint. Therein, the D'Angelos sought to assert a claim that the loan application submitted to Lancaster was a deliberate fraud perpetrated by Chase as part of its $13,000,000,000 settlement with the Department of Justice for misleading investors who bought residential mortgage-backed securities. Judge Finley denied that motion by order entered on January 14, 2015. In August 2017, the D'Angelos filed a motion for leave to file an amended complaint. Therein, the D'Angelos sought to assert fraud claims against Chase and Stewart Title (which was not a party to the declaratory judgment action), and to add Chase's attorneys as defendants. Honorable Alan Rubenstein denied that motion by order entered on January 19, 2018. Notably, Honorable Jeffrey Trauger did not rule on any of the D'Angelos' motions for leave to file an amended complaint.

In presenting their first issue, the D'Angelos fail to identify the specific claims they sought to add in their various motions or specify the parties against whom they sought to assert those additional claims. The D'Angelos also fail to identify what additional parties they sought to add as defendants, or what claims they sought to assert against those additional parties. Without the identification of any particular claim or party sought to be added, this Court is unable to ascertain any purported claim of error as to the three orders in question. To be sure, without such clarification, this Court is unable to assess whether any requested amendment would have been a futile exercise,

whether the claims were barred by the applicable statute of limitations, whether tolling principles might apply, or whether the proposed amendments would be inequitable. *See John Goffredo & Sons, Inc.*, 446 A.2d at 256; *Wiernik*, 736 A.2d at 624; *West Penn Power Co.*, 348 A.2d at 156. The D'Angelos' vague and unsupported statement that the statutes of limitation are unavailable to Chase and Stewart Title is simply insufficient to overcome these deficiencies. *See* Pa.R.A.P. 2119(b) (providing that arguments which are not appropriately developed are waived); *see also Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (holding that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter).

Moreover, the D'Angelos have provided no discussion whatsoever as to the reasons articulated by Judge Finley and Judge Rubenstein for denying the D'Angelos' various motions for leave to amend, nor any explanation as to how those judges abused their discretion or erred in any manner when denying leave to amend. Indeed, the *only* discussion provided by the D'Angelos regarding any particular judge is their statement that "*Judge Trauger* [ignored S-2]; hence *his orders* wholly disregarding such evidence must be reversed . . .." D'Angelos' Brief at 77. Given that Judge Trauger did not rule on any of the D'Angelos' motions for leave to amend, this statement suggests that the D'Angelos' claims regarding the orders denying leave to amend entered by Judge Finley and Judge Rubenstein are abandoned. *See In*

- 11 -

*Interest of T.Q.B.*, 286 A.3d 270, 273 n.5 (Pa. Super. 2022) (holding that issues raised in a Rule 1925(b) concise statement that are not developed in appellate brief are abandoned). Accordingly, we deem the D'Angelos' first issue waived for lack of development and/or abandoned.

In their second issue, the D'Angelos contend that the August 2021 orders granting summary judgment to Chase and Stewart Title violate the coordinate jurisdiction rule. Under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *See Riccio v. American Republic Ins. Co.*, 705 A.2d 422, 425 (Pa. 1997). The coordinate jurisdiction rule is premised on the sound jurisprudential policy of fostering finality in pretrial proceedings, thereby promoting judicial economy and efficiency. *Id*. This rule applies equally to civil and criminal cases, and it falls within the law of the case doctrine. *Id*. Under the law of the case doctrine,

> [a] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: . . . upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Id*. (citation omitted).

In determining whether the coordinate jurisdiction rule applies, we look to where the rulings occurred in the context of the procedural posture of the

case.  ***See Parker v. Freilich***, 803 A.2d 738, 745 (Pa. Super. 2002).  Our

Supreme Court has explained:

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge had denied an earlier motion.  However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

***Rellick-Smith v. Rellick***, 261 A.3d 506, 510 (Pa. 2021) (quoting ***Riccio***, 705

A.2d at 425).

The D'Angelos argue that the orders entered by Judge Trauger in August

2021 granting summary judgment to Chase and Stewart Title violate the

coordinate jurisdiction rule because they encompass the same issues decided

in orders entered previously by Judge Finley and Judge Rubenstein.

Specifically, the D'Angelos claim that the following orders preclude any further

ruling on their claim against Chase at Count I of the amended complaint filed

in the declaratory judgment action: Judge Finley's July 7, 2014 order denying

Chase's motion to dismiss Count I; Judge Rubenstein's January 19, 2018 order

denying Chase's motion to dismiss Count I; Judge Rubenstein's February 14,

2018 order denying Chase's motion for reconsideration of his January 19,

2018 order denying Chase's motion for summary judgment as to Count I; and

Judge Trauger's February 7, 2020 order initially denying Chase's renewed

motion for summary judgment.

The D'Angelos claim that the following orders preclude any further ruling on their claims against Stewart Title: (1) Judge Rubenstein's January 19, 2018 order denying Stewart Title's initial motion for summary judgment; (2) Judge Rubenstein's February 14, 2018 order denying Stewart Title's motion for reconsideration of the January 19, 2018 order; and Judge Trauger's February 7, 2020 order initially denying Stewart Title's renewed motion for summary judgment.

The D'Angelos maintain that "there is not one bit of new information" and there has been no intervening change in the controlling law nor any substantial change in the facts or evidence which would permit a departure from the coordinate jurisdiction rule. D'Angelos' Brief at 60-61.

The trial court considered the D'Angelos' second issue and determined that it lacked merit. Judge Trauger reasoned:

> The assertion by [the D'Angelos] that the court violated the coordinate jurisdiction rule by granting the renewed motion[s] for summary judgment where previous motions for summary judgment were denied ignores the important factual developments which have occurred since the original filing. In Pennsylvania, a lower court may consider subsequent motions for summary judgment where a large amount of new information has been added to the record in the time between the two motions. In this case, there have been numerous depositions and written discovery conducted since the original filings which have brought a large amount of new information into the record. Therefore, the court did not violate the coordinate jurisdiction rule by granting the renewed motion[s] for summary judgment . . ..

Trial Court Opinion, 8/26/22, at 4 (internal citation, quotation marks, and unnecessary capitalization omitted).

Based on our review, we discern no violation of the coordinate jurisdiction rule. Chase's initial motions for summary judgment as to Count I were filed in 2014 and 2016, respectively. Stewart Title's initial motion for summary judgment was filed in August 2017. Chase and Stewart Title did not file their renewed motions for summary judgment until October 2018. Judge Trauger specifically noted that "there have been numerous depositions and written discovery conducted since the original filings which have brought a large amount of new information into the record." *Id*. The record reflects that, in 2018, the D'Angelos filed a motion for an extension of time to conduct additional depositions, which the trial court granted in May 2018. *See* Order, 5/8/18, at 1. The record also reflects that the D'Angelos were noticing depositions and propounding discovery requests throughout 2018. *See e.g.*, Notice of Deposition of Stewart Title Corporate Representative, 7/24/18; Plaintiffs' Supplemental Request for Interrogatory Responses and Document Production Directed to Chase, 8/1/18.[7] Chase and Stewart Title deposed both James D'Angelo, Sr., and Carolyn D'Angelo on July 27, 2018. *See* Deposition of James D'Angelo, Sr., 7/27/18; *see also* Deposition of Carolyn D'Angelo,

---

[7] Stewart Title asserts that, after its initial motion for summary judgment was denied in January 2018, the D'Angelos "served extensive additional discovery upon [Stewart Title] and [Chase] and conducted numerous additional depositions, including the depositions of three present or former employees of [Stewart Title], a representative from [Chase], [Chase's] counsel, Joseph Kessler, Esquire, and a former officer of the title agency, Absolute." Stewart Title's Brief at 20, 38-39.

7/27/18. Moreover, the trial court entered an "Agreed Case Management Order" in June 2019 which expressly contemplated that expert reports and supplemental expert reports would be submitted by August 1, 2019, and that additional dispositive motions would be filed by the parties by August 30, 2019. **See** Agreed Case Management Order, 6/18/19, at unnumbered 1. Notably, that order was signed by the D'Angelos' counsel, thereby indicating their consent to the order. **See id**. at unnumbered 3.[8]

Given that the record supports the trial court's conclusion that there were intervening changes in the evidence of record since the original motions for summary judgment were filed by Chase and Stewart Title, we discern no violation of the coordinate jurisdiction rule. Accordingly, the D'Angelos' second claim warrants no relief.

In their third issue, the D'Angelos challenge the entry of summary judgment for Chase and Stewart Title. Our standard of review of the grant of a motion for summary judgment is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial

---

[8] The trial court subsequently entered a Date Certain Case Management Order extending these deadlines. **See** Date Certain Case Management Order, 8/7/19, at 1.

- 16 -

court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Phillips v. Lock*, 86 A.3d 906, 912-13 (citation omitted).

The D'Angelos assert that they raised genuine issues of material fact which should have defeated summary judgment for Chase and Stewart Title. Although the D'Angelos' arguments regarding the entry of summary judgment for Chase are intermingled with their arguments regarding the entry of summary judgment for Stewart Title, we will attempt to separate those arguments to properly address the orders granting summary judgment.

We first address the D'Angelos' challenge to the entry of summary judgment for Chase. The D'Angelos point to Chase's public admission in 2013 that "from 2005-2007 [it] routinely approved hundreds of billions of dollars of fraudulent mortgages as part of its colossal [residential mortgage backed securities ("RMBS") f]raud." D'Angelos' Brief at 63. The D'Angelos maintain that this public admission by Chase raised a genuine issue of material fact. The D'Angelos assert that, at some point in the litigation, Chase and its attorneys knew that the mortgage applications were forgeries. The D'Angelos further claim that Chase and its attorneys knew of exhibit S-2, a document entitled Corporate Assignment of Mortgage which purports to show that Chase

acquired the Note and Mortgage on August 11, 2005.[9] The D'Angelos argue that "S-2 is certainly revelation of a deceptive act and defense strategy that misled the D'Angelos and the court as to [Chase's] defense." *Id*. at 72.[10] The D'Angelos assert that "[t]hrough its agent Lancaster, who [Chase] used as a troll to find mortgages to fuel its colossal RMBS fraud, [Chase] was certainly just as involved in underwriting and approving the August 11, 2005 mortgage." *Id*. at 68. The D'Angelos contend that their "fraud claim against [Chase] in Count I of its [declaratory judgment action] should have been permitted" by denying its repetitive motion for summary judgment.[11] The

_____

[9] Stewart Title points out that exhibit S-2 is undated, incomplete, and unrecorded. *See* Stewart Title's Brief at 20 (noting that the document does not indicate a date when the purported assignment became effective, the recording information for the mortgage purportedly being assigned is blank, and the document was never recorded in the Recorder of Deeds); *see also* Chase's Brief at 18 (contending that "[t]here is no testimony or other evidence that [S-2] was ever delivered to Chase, and the document was never recorded").

[10] The D'Angelos additionally claim that, at some point, Chase and its counsel became aware of the affidavit of Sylvia Juarez, which was purportedly produced in the D'Angelos federal bankruptcy proceedings. However, the Juarez affidavit was not presented to the lower court and is not part of the certified record. Therefore, we may not consider it. *See Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa. Super. 2013) (holding that this Court may not consider evidence that is not included in the certified record).

[11] The D'Angelos additionally claim that the August 11, 2005 mortgage is void as a matter of law because it was not recorded until after the ninety-day deadline required by 21 P.S. § 444. Notably, section 444 applies to deeds, not mortgages, which are subject to 21 P.S. § 621 (requiring that a mortgage be recorded within six months). Moreover, the record reflects that the mortgage in question was recorded within six months.

D'Angelos conclude by claiming that Judge Trauger "had no grounds to rethink Judge Finley or Judge Rubenstein's orders" denying summary judgment to Chase." *Id*. at 72.

Initially, we observe that the D'Angelos limit their argument to the propriety of Judge Trauger's August 6, 2021 order granting summary judgment to Chase on Count I of the amended complaint filed in the declaratory judgment action. Although the D'Angelos purport to appeal from the April 11, 2011 order granting partial summary judgment for Chase in the form of an equitable lien on the property, and the July 7, 2014 order granting partial summary judgment for Chase on Count II (quiet title) of the amended complaint, the D'Angelos present no argument regarding these orders. Thus, any challenge to entry of partial summary judgment for Chase on the claims for an equitable lien and quiet title is waived. *See In Interest of T.Q.B.*, 286 at 273 n.5 (holding that issues raised in a Rule 1925(b) concise statement that are not developed in appellate brief are abandoned).

Turning to the grant of summary judgment for Chase on Count I of the amended complaint, Judge Trauger explained the basis for his ruling, as follows:

> In this case, [Chase] has obtained ownership by sheriff's sale of the property pursuant to the equitable lien previously granted by [Judge] Finley against the property. As a result, there is no longer a controversy with respect to the mortgage validity and property ownership because [Chase] is no longer asserting any claim under the alleged fraudulent mortgage. Even if [the D'Angelos] succeeded in proving the fraudulent mortgage, they would not be entitled to a declaratory judgment against [Chase] because the

equitable lien entered by [Judge] Finley is separate and distinct from the alleged fraudulent mortgage. Further, [the D'Angelos] failed to timely seek to set aside the sheriff's sale. Therefore, [the D'Angelos'] only claim against [Chase] for a declaratory judgment is moot and was properly dismissed by this court.

Trial Court Opinion, 8/26/22, at 4 (unnecessary capitalization omitted).

Viewing the record in the light most favorable to the D'Angelos, as the nonmoving party, we discern no error or abuse of discretion by Judge Trauger in granting summary Judgment to Chase on Count I of the amended complaint based on the mootness doctrine. We have described the mootness doctrine as follows:

[C]ases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Pub. Def.'s Office of Venango Cnty. v. Venango Cnty. Court of Common Pleas*, 893 A.2d 1275, 1279 (Pa. 2006) (*quoting Pap's A.M. v. City of Erie*, 812 A.2d 591, 599-600 (Pa. 2002)). "Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate." *Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, 79 A.3d 510, 516 (Pa. 2013). "An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) (citation and internal quotation marks omitted).

- 20 -

In their amended complaint, the D'Angelos merely sought a judicial declaration that, because the Note and Mortgage executed on August 11, 2005, had been forged, those documents were invalid, and Chase, as an assignee of the Note and Mortgage, could not enforce those documents.[12] *See* Amended Complaint, 3/12/07, at ¶¶ 23-24. That question became entirely moot when Chase obtained the equitable lien, and thereafter acquired the property on September 14, 2012, through the sheriff's sale, which the D'Angelos did not seek to set aside. Thus, Chase has had no need to enforce the Note and Mortgage since September 14, 2012. Because a determination of the validity and enforceability of the Note and Mortgage cannot have any practical effect on the existing controversy, Count I of the amended complaint is entirely moot.[13] Accordingly, the D'Angelos' challenge to the August 6, 2021 order granting summary judgment for Chase on Count I of the amended complaint merits no relief.

The D'Angelos' next challenge the grant of summary judgment to Stewart Title based on the statute of limitations. "Statutes of limitations are rules of law that set time limits for bringing legal claims." *Didomizio v.*

_____

[12] Contrary to the D'Angelos' assertion otherwise, Count I of the amended complaint does not aver that Chase participated in the August 11, 2005 mortgage transaction, either directly or indirectly, or that Chase committed any fraud of forgery. *See* Amended Complaint, 3/12/07, at ¶¶ 22-25.

[13] Notably, the D'Angelos do not discuss the mootness doctrine or challenge the sole basis for Judge Trauger's entry of summary judgment for Chase.

***Jefferson Pulmonary Assocs. & Asthma Allergy & Pulmonary Assocs.,***
***P.C.***, 280 A.3d 1039, 1046 (Pa. Super. 2022). The general rule is that a cause
of action accrues, and thus the applicable limitations period begins to run,
when an injury is inflicted. ***See Wilson v. El-Daief***, 964 A.2d 354, 361 (Pa.
2009); ***see also Pocono International Raceway, Inc. v. Pocono***
***Produce, Inc.***, 468 A.2d 468, 471 (Pa. 1983) (holding that the statute of
limitations begins to run as soon as the right to institute and maintain a suit
arises).

Fraud claims are governed by a two-year statute of limitations. ***See*** 42
Pa.C.S.A. § 5524(7). Claims under RICO are subject to a four-year statute of
limitations. ***See*** 42 Pa.C.S.A. § 5525(a)(4). Claims for unjust enrichment are
subject to a four-year statute of limitations. ***See*** 42 Pa.C.S.A. § 5525(a)(4).
Once a cause of action has accrued and the prescribed statutory period has
run, an injured party is barred from bringing his cause of action. ***See Fine v.***
***Checcio***, 870 A.2d 850, 857 (Pa. 2005).

In certain cases involving latent injury, and/or instances in which the
causal connection between an injury and another's conduct is not apparent,
the discovery rule may operate to toll the statute of limitations until the
plaintiff discovers, or reasonably should discover, that he has been injured
and that his injury has been caused by another party's conduct. ***See id***. at
859. As this Court has explained:

> The discovery rule is a judicially created device which tolls
> the running of the applicable statute of limitations until that point

when the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. The limitations period begins to run when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.

*Melley v. Pioneer Bank, N.A.*, 834 A.2d 1191, 1201 (Pa. Super. 2003) (internal quotation marks and citation omitted).

The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. This Court has explained:

Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) (internal citations and quotation marks omitted). Importantly, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Id*. Additionally, it is the plaintiff's burden to prove active concealment by clear and convincing evidence. *See Montanya v. McGonegal*, 757 A.2d 947, 951 (Pa. Super. 2000).

The D'Angelos assert that, at some point in the litigation, Stewart Title and its attorneys knew that the title insurance applications were forgeries. The D'Angelos contend that, almost five months after the August 2005 transaction had closed, Stewart Title created a fraudulent title insurance policy to protect itself after it discovered that its agents, Anthony and Friend, had issued a policy in collusion with James Jr.[14] The D'Angelos argue that the discovery rule and the doctrine of fraudulent concealment should apply to toll the statute of limitations on its claims against Stewart Title. The D'Angelos further argue that Stewart Title has no statute of limitations defense because it is vicariously liable for the fraudulent actions of its agents, Anthony and Friend, and it cannot escape such liability by claiming that Anthony and Friend are merely "limited agents." D'Angelos' Brief at 71. The D'Angelos point to a letter sent by counsel for Absolute to counsel for Stewart Title regarding Anthony and Friend, and assert that this letter presented a genuine issue of material fact which precluded the entry of summary judgment.

_____

[14] Stewart Title explains that "Absolute was a policy-issuing limited agent for Stewart Title which handled all aspects of the August 11, 2005 mortgage, including conducting the title search, handling the title work, issuing the commitment, conducting the settlement, disbursing the funds, recording the mortgage on December 29, 2005, and thereafter issuing a title insurance policy on behalf of Stewart Title (with an effective date of the mortgage recording, December 29, 2005), and then recording the title policy. **See** Stewart Title's Brief at 14-17. Absolute was not involved in the lower court proceedings and, from the record before us, it is unclear what relationship, if any, Absolute had with Anthony and Friend.

The trial court considered the D'Angelos' challenge to the order granting summary judgment for Stewart Title and determined that it lacked merit. The court reasoned:

It is undisputed that all claims arise out of the August 11, 2005 refinance transaction. . . ..

. . . The refinance transaction took place in 2005 and [the declaratory judgment] action was initiated in 2007 against all other defendants. The November 2, 2012 writ of summons filed by [the D'Angelos] against . . . Stewart Title followed approximately seven years after the transaction and more than six years after the date upon which [the D'Angelos] clearly had knowledge by their own admission of the alleged forgery by their son. Clearly, this would be outside the longest statute of limitations period applicable to the pending claims by [the D'Angelos] versus [Stewart Title].

Even if the statute of limitations clock were to begin only upon [the D'Angelos'] express acknowledgement of the alleged forgery, it was confirmed by James D'Angelo, Sr. that [the D'Angelos] had **actual knowledge of the alleged forgery on July 12, 2006**. D'Angelo, Sr. Deposition, 03/28/17, [at] 70. The filing of the subsequent writ of summons against . . . Stewart Title on November 2, 2012[,] is more than six years past the expressly acknowledged date [the D'Angelos] had actual notice and knowledge of the alleged forgery. Therefore, even if the statute of limitations clock begins on the date [the D'Angelos] acknowledge they were aware of [the] alleged forgery, [their] complaint against Stewart Title is barred by the applicable statute of limitations and [Stewart Title] was entitled to summary judgment.

Trial Court Opinion, 8/26/22, at 5-6 (footnote and unnecessary capitalization omitted, emphasis in original).[15]

Viewing the record in the light most favorable to the D'Angelos, as the nonmoving party, we discern no error or abuse of discretion by Judge Trauger in granting summary Judgment to Stewart Title based on the statute of limitations. It is undisputed that the D'Angelos discovered that they had been injured and that their injury was caused by another party's conduct in July 2006. James D'Angelo, Sr. testified that he discovered the alleged forgery on July 12, 2006, when he was served with Chase's complaint in the mortgage foreclosure action and he confronted his son, James, Jr., who admitted that he forged the D'Angelos' signatures. *See* Deposition of James D'Angelo, Sr., 7/27/18, at 99; *see also* Deposition of James D'Angelo, Sr., 3/28/17, at 57-58, 70. Carolyn D'Angelo became aware of the forgeries a few weeks after James, Sr. was served with Chase's complaint in the mortgage foreclosure action. *See* Deposition of Carolyn D'Angelo, 7/27/18, at 34; *see also* Deposition of James D'Angelo, Sr., 7/27/18, at 99-100. Accordingly, any application of the discovery rule would apply, if at all, to the period between the purported date of injury, August 11, 2005, and the date the D'Angelos

---

[15] The trial court further determined that summary judgment on the RICO claim was appropriate because the D'Angelos presented no evidence whatsoever to support their RICO claim against Stewart Title. *See* Trial Court Opinion, 8/26/22, at 6.

discovered their injury in July 2006. Thus, even under the discovery rule, the statute of limitations on all of the D'Angelos' claims began to run in July 2006.

With respect to the D'Angelos' attempt to invoke the doctrine of fraudulent concealment, in order for the doctrine to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied. **Baselice**, 879 A.2d at 278. Here, the D'Angelos have not identified any independent act of concealment by Stewart Title on which they claim to have justifiably relied. Even crediting the D'Angelos' unsupported claim that Stewart Title created a fraudulent title insurance policy in December 2005, the D'Angelos have not asserted that they justifiably relied on that policy or that the issuance of that policy somehow concealed the identity or involvement of Stewart Title or its agents. Regardless, by the time the D'Angelos filed the declaratory judgment action in January 2007, they knew that other parties and entities had assisted their son in executing the forged mortgage refinance documents, including Anthony and Friend. Thus, even if the D'Angelos had properly invoked the doctrine of fraudulent concealment, the statute of limitations would have been tolled no later than January 2007. Accordingly, given our determination that the statute of limitations on all of the D'Angelos' claims began to run in July 2006, their claims for fraud/fraudulent concealment, RICO violations, and unjust enrichment were barred by the

applicable two and four-year statutes of limitation. **_See_** 42 Pa.C.S.A. § 5524(7); 42 Pa.C.S.A. § 5525(a)(4); 42 Pa.C.S.A. § 5525(a)(4).

As we discern no error or abuse of discretion by Judge Trauger in granting summary judgment in favor of Chase and Stewart Title, the D'Angelos' third issue merits no relief.

In their final issue, the D'Angelos assert that Chase and Stewart Title committed fraud on the court and that every order issued in this case that was procured by such fraud on the court must be vacated. While Pennsylvania courts will not countenance fraud, **_see Sallada v. Mock_**, 121 A. 54, 55 (Pa. 1923) (holding that that "where a judgment has been obligated by fraud, no court will permit its records and processes to be the instruments of infamy"); **_see also Commonwealth v. Harper_**, 890 A.2d 1078, 1082 (Pa. Super. 2006) (holding that "courts simply will not countenance fraud, and when a decision is obtained through its use, the court retains the inherent power to rescind that decision"), our courts have not created a legal definition for fraud upon the court. However, the Third Circuit has passed upon the topic, noting that "[t]he concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment." **_Herring v. United States_**, 424 F.3d 384, 386-87 (3d Cir. 2005).

In **_Herring_**, the Third Circuit articulated a stringent test to determine whether fraud had been committed upon the court:

> In order to meet the necessarily demanding standard for proof of fraud upon the court[,]we conclude that there must be:

(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and that it must be supported by clear, unequivocal and convincing evidence.

*Id*. (internal quotations omitted); *see also* Black's Law Dictionary (9th ed. 2009) (defining an officer of the court as "[a] person who is charged with upholding the law and administering the judicial system," specifically judges, clerks, sheriff deputies, and attorneys).[16]

The *Herring* Court explained that "the fraud on the court must constitute "egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel." *Herring*, 424 F.3d at 390 (citing *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)). Mere perjury by a witness is not enough to constitute fraud upon the court. *See id*.

---

[16] Other United States Courts of Appeals expressly require that fraud upon the court must involve an officer of the court. *See Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 48 (1st Cir. 1995); *see also Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993) (defining fraud upon the court as consisting of conduct by an officer of the court); *Pumphrey v. Thompson Tool Co.*, 62 F.3d 1128, 1130 (9th Cir. 1995) (noting that "one species of fraud upon the court occurs when an 'officer of the court' perpetrates fraud affecting the ability of the court or jury to impartially judge a case"); *Weese v. Schukman*, 98 F.3d 542, 553 (10th Cir. 1996) (noting that "fraud on the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court") (citation omitted); *Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (11th Cir. 1980) (same).

The D'Angelos contend that "the fraud on the court is [Chase's] seminal lie that '*[Chase] did not participate in underwriting or approval of the Mortgage and loan documents having acquired the August 11, Mortgage by assignment [on September 14, 2006]*.'" D'Angelos' Brief at 43 (unnecessary capitalization omitted, emphasis in original). The D'Angelos argue that exhibit S-2, which is a purported Corporate Assignment of Mortgage dated and notarized on August 11, 2005, proves that Chase acquired the mortgage and note on August 11, 2005. The D'Angelos maintain that, "[b]ecause the actual assignment date is also the actual transaction date, the logical inference is that [Chase] was certainly involved in underwriting and approving the blatantly fraudulent and utterly forged August 11, 2005 mortgage application along with its agent Lancaster." *Id*. at 44. According to the D'Angelos, "the . . . August 11, 2005 mortgage paid off an April 2005 $1,500,000 mortgage which was also blatantly fraudulent and utterly forged." *Id*.

The trial court initially considered aspects of the D'Angelos fraud on the court claim in 2014, when it stated:

> [The D'Angelos] make the bald and very serious allegation that "lawyers representing Stewart Title and [Chase] concealed that information from this court to defraud this court and [the D'Angelos] and to profit from the fraud by taking [their] home." While this court takes judicial notice that banks are typically in the business of lending money through the provision of notes and mortgages and earn profits by charging interest on those mortgages, the record is devoid of any factual support for the allegations concerning "concealment" and "fraud" perpetrated upon this court or the D'Angelos.

Trial Court Opinion, 11/10/14, at 17, 21 (unnecessary capitalization omitted). The court went on to describe the D'Angelos' claim that "[Chase] and Stewart Title, their lawyers, and witnesses, made false statements and concealed . . . material facts using nothing but their immense financial and legal power spending over $500,000 to persecute the D'Angelos in this court in order to profit from fraud" as "wholly unsupported, wildly speculative, very serious, and in part completely irrelevant . . .." *Id*. (unnecessary capitalization omitted).

While the trial court did not specifically mention the D'Angelos' fraud on the court claim in its Rule 1925(a) opinion, it nevertheless stated: "no reasonable finder of fact could conclude [the D'Angelos'] repeated baseless and factually unsubstantiated allegations of a 'seminal lie' would leave any genuine issue of material fact for a factfinder required to overcome summary judgment." Trial Court Opinion, 8/26/22, at 7 (unnecessary capitalization omitted); *see also* Trial Court Opinion, 10/18/21, at 7 (same).

Based on our review, we conclude that the D'Angelos have failed to meet their demanding burden of proving fraud upon the court. Under *Herring*, the D'Angelos were required to establish by clear, unequivocal, and convincing evidence that there has been: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court. *Herring*, 424 F.3d at 386-387. In their brief, the D'Angelos have asserted only that Chase and Stewart Title, which are not officers of the court,

committed a fraud upon the court. The D'Angelos have not identified any wrongdoing, let alone intentional fraud, committed by any individual officer of the court to the trial court in these proceedings. As such, the D'Angelos have failed to present clear, unequivocal, and convincing evidence that an officer of the court directed an intentional fraud at the trial court and, in fact, deceived the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2023